United States District Court
Southern District of Texas
**ENTERED**
July 25, 2016
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY FRANCISCO, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-3178 |
| | § | |
| SOUTHWESTERN BELL TELEPHONE COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is defendant Southwestern Bell Telephone Company's ("SWBT") motion for summary judgment.  Dkt. 15.  Having considered the motion, response, reply, record evidence, and applicable law, the court is of the opinion that the motion should be GRANTED in part and DENIED in part.  The motion is GRANTED as to plaintiff Anthony Francisco's retaliation claim and DENIED as to his interference claim.  Accordingly, Francisco's retaliation claim is DISMISSED WITH PREJUDICE.

## I. BACKGROUND

This is an employment case.  Francisco alleges that SWBT violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2), by interfering with his rights under the FMLA and retaliating against him for engaging in a protected activity. Dkt. 1 at 5.  Francisco worked for SWBT as a premises technician from August 26, 2011, until his termination on September 4, 2014.  *Id.* at 2.  He was responsible for performing all aspects of installing, repairing, disconnecting, modifying, upgrading, and downgrading of customer service offerings.  Dkt. 18 at 2.

When Francisco was hired, SWBT provided him with a copy of its FMLA guidelines, which state that FMLA leave would run concurrently with short term disability benefits.  Dkt. 15, Ex. 2 at

103 (SWBT's FMLA guidelines).  The guidelines further provide that if an employee's claim for disability is denied, the employee may request FMLA consideration for the denied disability period, provided that certain requirements are satisfied.  *Id*.

During his tenure, Francisco received disability benefits and took FMLA leave concurrently on two occasions:  once in October, 2012, and again in June, 2013.  During the months leading up to his first FMLA leave, Francisco's supervisor at the time, Heinricht Muschamp, had issued Francisco written notices for poor performance.  Dkt. 15, Ex. 2 at 39–41.  On October 9, 2012, Francisco submitted an online request for FMLA-protected leave.  SWBT approved Francisco's request with an absence start date of October 2, 2012.  *See* Dkt. 15, Ex. 3 (October 10, 2012 FMLA eligibility form).  SWBT also approved short-term disability benefits during this FMLA-protected absence.  Dkt. 15, Ex. 2 at 93.  Francisco remained out of work on approved FMLA leave through November 15, 2012.  *Id*.  He returned to work in the same job capacity, without incident, after completing treatment and being released to work by his physician, Dr. Gorsuch.  *Id*. at 33 (Francisco Dep.).

Walter Sarah succeeded Muschamp as Francisco's supervisor on January 1, 2013.  *Id*. at 18. Francisco's performance issues continued throughout the early part of 2013.  In April of 2013, Sarah put Francisco on Decision-Making Leave (DML) based on Francisco's failure to meet his performance expectations.  *Id*. at 46.  Sarah provided him with a letter explaining that the DML status would remain in effect for twelve months, until May 26, 2014.  *Id*. at 97–99.  The letter emphasized "the extremely serious nature of [the] DML" and stated "[y]our job is in jeopardy and failure to improve to acceptable performance levels could result in your dismissal."  *Id*. at 99.

Shortly after being placed on DML, Francisco applied for short-term disability leave in June 2013.  Dkt. 15, Ex. 2 at 47 (Francisco Dep.);  *see also* Ex. 5 (July 1, 2013 FMLA eligibility form).

Francisco testified that he applied for leave because he was experiencing anxiety, depression, and sleeplessness, and because his father had cancer.  Dkt. 15, Ex. 2 at 26 (Francisco Dep.).  The eligibility form (FMLA1) states that Francisco's FMLA-protected leave would run concurrently with the approved disability period with June 24, 2013 as the first day of absence.  Dkt. 15, Ex. 5 at 4. The form further provides that if the expected disability leave was denied, then a revised eligibility form must be completed and submitted for the absence period and a copy of the Certification of Health Care Provider form (FMLA4) should be given to the employee.  *Id*. at 3.  The FMLA department sent Francisco a letter on July 2, 2013, which states in relevant part:

> If your disability claim or leave of absence request is approved, you will receive an automatic FMLA approval, as long as you are eligible for FMLA and have not exhausted 12 weeks in a 12-month period under federal FMLA or any applicable leave period under state law. FMLA runs concurrently with approved short-term disabilities and/or leaves of absence for reasons that may also qualify under FMLA.

> Please advise your supervisor of any changes to your home address so that they may be included on the FMLA1 and updated in our records.

*Id*. at 4.

Francisco was approved for short-term disability benefits through August 12, 2013, based on the medical documentation provided by Dr. Gorsuch.  Dkt. 15, Ex. 2 at 52 (Francisco Dep.); Ex. 6 at 4 (Dr. Gorsuch's certification).  On July 1, 2013, the AT&T Integrated Disability Service Center ("IDSC") sent Francisco a letter stating that he was approved to receive disability benefits from July 1 through July 24, 2013.  Dkt. 15, Ex. 7 (July 1, 2013 IDSC letter).  On July 26, the IDSC sent a letter to Francisco stating that his disability benefits were extended through August 12, 2013, again based on the medical documentation submitted by Dr. Gorsuch.  Dkt. 15, Ex. 8 (July 26, 2013 IDSC letter).

The July 26 IDSC letter states:

Throughout a disability absence it is the responsibility of the employee to ensure that requested medical documentation is provided in a timely manner. In the situation where an extension of benefits may be considered, documentation must be submitted prior to the end of the approved authorization period.

*Id*. at 2.

On August 15, 2013, the IDSC sent a letter to Francisco's address in Houston, Texas, which states that his short-term disability benefits were denied effective August 13, 2013. Dkt. 18, Ex. 1 at 106–109. The letter notes that calls had been made to Dr. Gorsuch (Francisco's psychologist) and Dr. Pham (Francisco's psychiatrist) in an attempt to obtain the required information to continue Francisco's short-term disability coverage. *Id*. at 107.

Because Francisco's short-term disability had been denied, Francisco's supervisor, Walter Sarah, submitted a new FMLA eligibility form in an attempt to extend Francisco's FMLA leave to cover the August 14 to September 29, 2013 time period. Dkt. 18, Ex. 1 at 63–65. On August 20 and August 21, 2013, letters were mailed to Francisco's Houston address requesting additional documentation—the completion of the Certification of Health Care Provider (FMLA4) form. *Id*. at 66, 73. Both letters instructed Francisco to have his health care provider submit the requested documentation to AT&T FMLA Operations by August 29, 2013. *Id*. Additionally, SWBT's notes state that Sarah called Francisco and "left a message regarding denied disability" on August 15 and August 16, 2013. Dkt. 15, Ex. 2 at 112 (separation proposal).

On August 19, 2013, SWBT mailed a "Demand to Return to Work Employee Notification Letter" to Francisco at his Houston address. *Id*. at 110. The letter states that Francisco was denied disability benefits and was required to report to work on August 26, 2013. *Id*. The letter further states that if Francisco planned to appeal the decision denying his disability he had to do so by

4

August 26, 2013.  *Id*.  On August 27, 2013, SWBT sent a "Second Demand to Return to Work Employee Notification Letter" to Francisco's Houston address.  Dkt. 15, Ex. 2 at 111.  This letter gave a return to work date of September 3, 2013, and warned that "failure to report to work . . . will result in your employment being terminated."  *Id*.  Francisco was terminated by SWBT on September 4, 2013, citing "Insubordination- Failure to Follow Management Directive to Return to Work" as the reason for dismissal.  *Id*. at 112 (separation proposal).

Francisco claims that he did not receive any of SWBT's written communications, including the letters advising him to complete the certification and the letters demanding that he return to work, because he was living in Florida during the month of August.  Dkt. 18, Ex. 1 at 26–27 (Francisco Dep.).  While Francisco was on FMLA leave, he was informed that his father, who lives in Florida, had terminal cancer.  *Id*. at 5.  Francisco relocated to Florida sometime in late July or early August to help care for his father.  *Id*.  Francisco claims that he discovered that his disability benefits were terminated once he failed to receive his scheduled payment sometime in mid to late August of 2013.  *Id*. at 34.  This prompted Francisco to contact SWBT to inquire about his check on August 26, 2013.  *Id*.; *see also* Dkt. 18, Ex. 1 at 97 (SWBT's claim notes).  During that conversation, Francisco learned that his disability had been denied because his healthcare provider had not responded to requests for additional information on the "FMLA4" form.  *Id*.  Francisco further alleges that he informed claims personnel that he was in Florida because his father had passed away three days earlier.  *Id*.  Francisco claims that he attempted to contact SWBT during this time period to notify them of the situation.  *Id*. at 27–28.  However, Francisco admits that he never contacted his supervisor or anyone directly connected with his employment.  *Id*. at 17–18.  He further claims that he attempted to contact his psychologist—Dr. Gorsuch—to notify him that additional paperwork was needed for short-term disability eligibility.  *Id*. at 16–17.  However, Francisco was unable to reach Dr. Gorsuch because

he suffered an emergency medical condition that caused him to be absent from his practice until September 30, 2013. *Id*. Francisco claims that when he called HR Benefits and notified them about the predicament he faced, the person he spoke with told him he was in a "Catch 22" situation. *Id*. at 28. When Dr. Gorsuch returned to his office on September 30, 2013, he submitted the requested paperwork along with an explanation as to why it was not originally sent in August. His letter stated: "My failure to provide them earlier was precluded by a personal medical emergency leading to an open-heart surgery and recovery that kept me form [sic] the office and dealing with all my clinical work." *Id*. at 110 (Dr. Gorsuch letter).

On November 6, 2014, Francisco filed this lawsuit against SWBT, asserting claims under the FMLA and American Disabilities Act ("ADA"). Dkt. 1. On December 11, 2015, SWBT filed a motion for summary judgment seeking to dismiss all claims. Dkt. 15. Francisco subsequently withdrew his ADA claims (Dkt. 21) and filed a response in opposition to SWBT's motion for summary judgment as to the FMLA claims. Dkt. 18. SWBT filed a reply in support of its motion on January 19, 2016. Dkt. 19. The motion is now ripe for disposition.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the

non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. LAW & ANALYSIS

The FMLA prohibits both the interference with rights to exercise protected leave and discrimination centered around the exercise of that leave. 29 U.S.C. § 2615(a).  The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided by the Act. *Id.* § 2615(a)(1).  Additionally, it is unlawful for any employer to discharge or discriminate against any individual because she exercised her rights under the FMLA. *Id.* § 2615(a)(2).  Claims brought under section 2615(a)(1) have been identified as "interference" or "prescriptive" claims, whereas claims brought under section 2615(a)(2) have been identified as "retaliation" or "proscriptive" claims. *See Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 349 n.2 (5th Cir. 2013) (Elrod, J., concurring);  *see also Bryant v. Tex. Dept. of Aging & Disability Servs.*, 781 F.3d 764, 768 (5th Cir. 2015).

A key distinction between the claims is the presence of discriminatory intent; claims that arise from the deprivation or interference of FMLA rights do not require discriminatory intent, whereas retaliation claims do. *Cuellar,* 731 F.3d at 349.  Accordingly, the *McDonnell Douglas* burden-shifting framework applies to Francisco's retaliation claim, but it does not apply to his interference claim. *See, e.g.*, *Hunt v. Rapides Healthcare Sys.,* LLC, 277 F.3d 757, 763–71 (5th Cir. 2001) (analyzing a plaintiff's claim for failure to award an FMLA entitlement separately from her retaliation claim, imposing the *McDonnell Douglas* burden-shifting framework in the latter context) (*rev'd on other grounds, Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016));  *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (same).

7

Francisco alleges that SWBT violated both the "interference" and "retaliation" provisions of the FMLA. Dkt. 1 at 5. Specifically, Francisco alleges that SWBT interfered with his exercise of FMLA rights by denying him leave beyond August 12, 2013, and then retaliated against him by terminating his employment on September 4, 2013.

## A.      FMLA Interference Claim

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the statute]." 29 U.S.C. § 2615(a)(1). Unlike retaliation claims, interference claims do "not require a showing of discriminatory intent"; the plaintiff must prove only an act of interference. *Cuellar*, 731 F.3d at 349; *see also Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002) ("If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation regardless of the employer's intent."). To establish FMLA interference, Francisco must establish that: (1) he suffered from a serious medical condition that prevented him from working, entitling him to the benefit of FMLA protection; (2) SWBT interfered, restrained, or denied his exercise of FMLA rights; and (3) he was prejudiced by violation of those rights. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S. Ct. 1155 (2002); *Mauder,* 446 F.3d at 580; *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).

SWBT argues that Francisco's interference claim fails as a matter of law because he was not entitled to FMLA protection when he was terminated on September 4, 2013. Dkt. 15 at 26. However, Francisco appears to allege two alternative theories of interference: (1) SWBT terminated his employment while he was on FMLA leave; and (2) SWBT wrongfully denied him of FMLA leave beyond August 13. Dkt. 1 at 5; Dkt. 18 at 18. SWBT maintains that Francisco was not

entitled to FMLA leave beyond this date because he failed to provide the proper medical certification as required by SWBT's policies and procedures.  Dkt. 19 at 3.

**(i) SWBT's FMLA Procedures**

Based on the court's review of the record evidence,[1] the court finds that Francisco failed to take the necessary steps for obtaining SWBT's approval for FMLA leave from August 14 to September 30, 2013 by failing to satisfy the medical certification requirement.  Moreover, Francisco had, at a minimum, constructive notice of SWBT's medical certification requirement.  At the outset of Francisco's employment, SWBT gave Francisco a copy of its FMLA guidelines, which provide:

> FMLA runs concurrently with Short-Term Disabilities.  This will be effective as long as you are eligible for FMLA and have not exhausted 12 weeks in a 12-month period. . . .
>
> If your claim for disability benefits is denied, you may request FMLA consideration for the denied disability period if you have met the eligibility requirements and have not exhausted your FMLA entitlement. . . . **You will be required to have your health care provider complete and submit a Certification of Health Care Provider Form (FMLA4) to FMLA Operations within the allotted time frame to support your absence in accordance with FMLA guidelines.**

Dkt. 15, Ex. 2 at 103 (SWBT's FMLA Guidelines);  Dkt. 18, Ex. 1 at 24–25 (Francisco testifying that he received the FMLA guidelines when he was hired).

Likewise, the initial eligibility form filled out by Francisco states: "The employee does not need to receive an FMLA4 (Certification of Health Care Provider).  FMLA will run concurrently with an approved disability, and/or applicable Leaves of Absence.  If the expected disability is denied after this form has been submitted, a revised FMLA1 must be completed and submitted for

---

[1]In reaching its conclusion, the court reviewed the following documents: SWBT's FMLA Guidelines, the July 1 FMLA eligibility form, the July 2, 2013 letter, the August 14 eligibility form, the August 20, 2013 letter, and the August 21 letter.  Dkt. 15, Ex. 2; Dkt. 18, Ex. 1 at 60–74.

this absence period and a copy of the FMLA4 (Certification of Health Care Provider) should be given to the employee." Dkt. 15, Ex. 5 at 3.

SWBT initially approved Francisco's disability through July 24, and then extended his disability through August 12, 2013, based on the medical certifications provided by Dr. Gorsuch. Dkt. 15, Exs. 7, 8 (IDSC letters).  However, because SWBT was unable to get in touch with Francisco or obtain the required medical information from Dr. Gorsuch or Dr. Pham, on August 15, 2013, SWBT sent a letter stating that Francisco's short-term disability coverage was denied effective August 13, 2013.  Dkt. 18, Ex. 1 at 106–109.  Sarah proceeded to file a revised FMLA1 on Francisco's behalf and SWBT conditionally designated Francisco's leave as FMLA-qualifying through September 30, 2013.  Dkt. 15, Ex. 10 at 3.  The revised eligibility form states:

> It is the employee's responsibility to make sure the FMLA4 (Certification of Health Care Provider) is received by AT&T FMLA Operations within 15 calendar days. Requests for FMLA will not be validated (i.e. will be denied FMLA protection) if the FMLA4 (Certification of Health Care Provider) is not received within the specified time frame.

*Id*.

This triggered Francisco's obligation to complete and return a Certification of Health Care Provider (FMLA 4) by August 29, 2013 in order to qualify for FMLA leave through September 30, 2013.  *See* Dkt. 18, Ex. 1 at 66, 73 (letters dated August 20 and August 21, advising Francisco to submit the FMLA4 form by August 29).  It is undisputed that the Certification of Health Care Provider form was not submitted to SWBT until September 30, 2013.  Therefore, the record shows that Francisco did not satisfy SWBT's requirements for validating his conditionally approved FMLA leave for the August 14 to September 30 time period.

### (ii) Whether Unusual Circumstances Justify Francisco's Noncompliance

The FMLA authorizes SWBT to require Francisco to comply with these types of customary

10

notice and procedural requirements for requesting leave, absent unusual circumstances.  *See* 29 C.F.R. § 825.302(d).  If "an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied."  *Id*.

Francisco cites to *Villegas v. Albertsons, LLC* in support of his claim that unusual circumstances justify his failure to comply with SWBT's medical certification requirement.  96 F. Supp. 3d 624, 633 (W.D. Tex. 2015) (finding a genuine issue of material fact as to whether unusual circumstances justified the plaintiff's failure to comply with employer's FMLA requirements where the plaintiff's supervisor had previously failed to follow or enforce them).  In *Villegas*, the court noted:

> In general, the Fifth Circuit frowns upon strict enforcement of an employer's FMLA procedures where the employee gives adequate notice of his need for FMLA leave and does not affirmatively refuse to comply with the employer's procedures. *Compare Saenz*, 613 F.3d at 580–82 (holding that "district court erred in strictly enforcing [employer's] FMLA procedures" where employer "had an abundance of information" about employee's need for leave and employee had not "affirmatively refused to comply with her employer's procedure"), *with Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 842–44 (5th Cir. 2007) (affirming district court's enforcement of employer's policy because plaintiff affirmatively refused to comply with it and offered no persuasive reason to justify setting it aside).  Further, the adequacy of an employee's notice regarding the need for FMLA leave is normally a jury question.

*Villegas*, 96 F. Supp. 3d at 632.

What circumstances qualify as "unusual" is not well defined in the regulations and the Fifth Circuit has not weighed in on the issue.  *Id*.  Section 825.302(d) provides that "[u]nusual circumstances would include situations such as when an employee is unable to comply with the employer's policy that requests for leave be made by contacting a specific number because on the day the employee needs to provide notice of his or her need for leave there is no one to answer the

call-in number and the voice mail box is full." In accordance with this example, courts have applied the unusual-circumstances exception where circumstances physically prevent the employee from using the prescribed channels of communication. *Id*. at 632–33 (citing *Flores v. Murphy Co.*, 2014 WL 584553, at *6 (D. Or. Feb. 12, 2014) (finding sufficient evidence of unusual circumstances where employee could not comply with employer's call-in procedure because he was incarcerated and lacked phone access)). Courts have also deemed circumstances "unusual" when the employee's medical condition or illness prevents compliance with the normal procedures. *See, e.g.*, *Howard v. VT Halter Marine, Inc.*, No. 1:10CV327 LG-RHW, 2011 WL 2414672 (S.D. Miss. June 10, 2011). Finally, courts have applied the exception where some ambiguity related to the employer's procedures or conduct justified the employee's noncompliance. *See Fuller v. AT & T*, No. 12-1001, 2014 WL 66019, at *7 (W.D. Pa. Jan. 8, 2014) (applying unusual-circumstances exception where conflicting instructions about procedures raised a genuine issue of fact as to whether noncompliance was justified); *see also Uselton v. CSX Transp., Inc.*, No. 3:13-cv-349, 2014 WL 4388272, at *5 (N.D. Ohio Sept. 5, 2014) (finding that a reasonable juror could apply unusual-circumstances exception where employer's procedure conflicted with special instructions from its employee-assistance program and thus "effectively mitigated [plaintiff]'s failure to provide [his employer] with notice").

In this case, Francisco was granted FMLA leave from June 24, 2013 to August 12, 2013. However, it is important to note that the initial documents approving Francisco's FMLA leave do not state that Francisco's FMLA leave expires on August 12. Rather, the August 12 expiration date was determined at a later date when Francisco's disability was denied, triggering Francisco's obligation to coordinate with his doctor to complete and submit the FMLA4 form to SWBT within

12

15 days.  Due to the following circumstances, Francisco failed to submit his certification by the August 29 deadline:

- In late July or early August, Francisco relocated to Florida to take care of his terminally ill father.  Dkt. 18, Ex. 1 at 5 (Francisco Dep.).  Francisco testified that he did not notify his supervisors at SWBT because his doctor had instructed him not to contact them because he was being treated for depression and anxiety, in part caused by work-related stress.  *Id*. at 17.  Instead, Francisco notified SWBT of his change in address by calling SWBT's corporate office.  *Id*.  Consequently, Francisco did not receive any of SWBT's written communications, including the letters advising him to complete the certification and the letters demanding that he return to work.  *Id*. at 26–27.  Francisco further testified that he did not receive any phone calls or messages from SWBT.  *Id*. at 26.

- On August 26, 2013, Francisco called SWBT to inquire about why he had not received his disability check.  Dkt. 18, Ex. 1 at 97 (SWBT's claim notes).  During that conversation, Francisco learned that his disability had been denied because his healthcare provider had not responded to requests for additional information on the FMLA4 form.  *Id*. at 34–35 (Francisco Dep.).  Francisco claims that he informed SWBT claims personnel that he was in Florida and that his father had passed away three days earlier.  *Id*.

- After this conversation, Francisco claims that he immediately attempted to contact Dr. Gorsuch to notify him that additional paperwork was needed to continue his short-term disability and FMLA leave.  *Id*. at 16–17.  However, Francisco was unable to reach Dr. Gorsuch because he suffered an emergency medical condition that caused him to be absent from his practice until September 30, 2013.  *Id*.  The record also shows that Francisco attempted to contact his psychiatrist, Dr. Pham, on multiple occasions.  *See* Dkt. 18, Ex. 1 at

113–117 (notes from Dr. Pham's office, stating "Pt. keeps calling about his disability form" and patient is "freaking out and does not know what to do").  When Dr. Gorsuch returned, he promptly submitted the requested paperwork and a letter confirming that he had been out of the office because he underwent open-heart surgery.  *Id*. at 110 (Dr. Gorsuch letter).

- Francisco further claims that he contacted SWBT's HR benefits department and notified them of Dr. Gorsuch's medical condition and his inability to submit the required paperwork.  *Id*. at 27 (Francisco Dep.).  Francisco alleges that he was told he was in a "Catch 22" situation because he "couldn't be released to go back to work" and "couldn't get the documents" to extend his FMLA leave.  *Id*. at 28.

SWBT responds by arguing that Francisco is solely to blame for his failure to comply with SWBT's certification requirement because "[o]ther health care providers could have completed the certification" and Francisco "was responsible for updating his contact information and informing SWBT of changes to his address."  Dkt. 19 at 4.  Although Francisco failed to communicate with his supervisors, Francisco testified that (1) he updated his contact information by calling SWBT's corporate office and (2) prior to the August 29 deadline, he informed SWBT's HR benefits department that he was attempting to comply with the medical certification requirement but was unable to do so because his doctor was out of the office due to an emergency medical condition. These circumstances create a fact issue as to whether adequate notice of Francisco's need for FMLA leave was provided to SWBT.  *See Hopson v. Quitman Cnty. Hosp. and Nursing Home, Inc.*, 126 F.3d 635, 640 (5th Cir. 1997) (holding that "the adequacy of [the plaintiff's] notice is a fact issue"); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 304 (3d Cir. 2012) ("Under the circumstances of this case, we believe that the adequacy of [the plaintiff's] notice is a question of fact."); *Murphy v. FedEx Nat'l LTL, Inc.*, 618 F.3d 893, 903 (8th Cir. 2010) ("Our cases instruct that

the adequacy of an employee's notice requires consideration of the totality of the circumstances. . . . and is typically a jury question." (internal citation omitted)); *Villegas,* 96 F. Supp. 3d at 633 ("Other courts, without invoking the unusual-circumstances exception specifically, have nonetheless excused the employee for failing to comply with the employer's procedures where a fact issue existed about whether the employee gave adequate notice of the need for leave.")

Moreover, even assuming that Francisco did not provide adequate notice, a reasonable juror could find that, under the circumstances, Francisco's noncompliance was justified. Even if Francisco had promptly received the letters advising him to submit the medical certification and immediately undertook efforts to do so, the circumstances still would have made it difficult to submit the form by August 29. Because of Dr. Gorsuch's medical emergency, it appears Francisco would have had to coordinate to have a different health care provider treat and diagnose him, and then complete and submit the medical certification to SWBT within 15 days.[2]   Accordingly, the court finds that there is a genuine issue of material fact as to whether unusual circumstances justified Francisco's failure to comply with SWBT's procedural requirements for obtaining additional FMLA leave. Therefore, SWBT's motion is DENIED as to Francisco's interference claim.

## B.  FMLA Retaliation Claim

As mentioned above, the *McDonell Douglas* burden-shifting framework applies to Francisco's retaliation claim. *See Wheat*, 811 F.3d at 705 (5th Cir. 2016) (holding that retaliation claims under the FMLA are analyzed under the *McDonnell Douglas* burden-shifting framework). Under step one of this framework, Francisco is required to set out a *prima facie* case of retaliation by establishing: (1) he engaged in a protected activity; (2) the employer took a materially adverse action against him;

---

[2]Neither party has offered any explanation as to why Dr. Pham, Francisco's psychiatrist, was unable to complete and submit the certification.

and (3) a causal link exists between his protected activity and the adverse action.  *Id*.  If Francisco

succeeds in making a *prima facie* case, the burden shifts to SWBT to articulate a legitimate

nondiscriminatory or nonretaliatory reason for the adverse employment action.  *See Hunt*, F.3d at

768.  Once SWBT has done so, Francisco must show by a preponderance of the evidence that

SWBT's reason is a pretext for retaliation.  *Id*.

Because the court finds that (1) SWBT has satisfied its burden of articulating a legitimate

nonretaliatory reason for termination and (2) Francisco failed to meet his burden of showing pretext,

the court need not decide whether Francisco has established a *prima facie* case for FMLA retaliation.

Therefore, the court will assume, without deciding, that Francisco has made a *prima facie* case under

the first step of the *McDonnell Douglas* framework.

**(i) SWBT's Nonretaliatory Reason for Termination**

For step two, SWBT's "burden is one of production, not persuasion; it can involve no

credibility assessment."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct.

2097 (2000).  Here, SWBT has clearly met its burden by producing a significant amount of evidence

to show that Francisco was terminated for insubordination for failure to return to work.  Dkt. 15,

Ex. 2 at 112 (SWBT's separation proposal).  A plaintiff's policy violations are legitimate and

nondiscriminatory reasons for termination.  *Harville v. Tex. A & M Univ.*, 833 F. Supp. 2d. 645, 658

(S.D. Tex. 2011) (Hoyt, J.) (citing *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001)); *Mayberry

v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).

There is ample evidence to support SWBT's assertion that it terminated Francisco due to his

failure to return to work.  First, SWBT's separation proposal states that Francisco's reason for

dismissal was "Insubordination–Failure to follow Management Directive to Return to Work."

Dkt. 15, Ex. 2 at 112.  Moreover, the record is replete with documentary evidence that supports

16

SWBT's stated reason for dismissal.  The record shows that SWBT attempted to contact Francisco and his physicians on multiple occasions—via letter and telephone—before and after the expiration of his disability benefits and approved FMLA leave.  *See* Dkt. 18, Ex. 1 at 106–109 (August 15 letter advising Francisco that his benefits were denied effective August 13, 2013); at 66 (August 20 letter requesting that Francisco complete and return the "FMLA4" form by August 29, 2013); at 73 (August 21 letter requesting that Francisco complete and return the "FMLA4" form by August 29, 2013); Dkt. 15, Ex. 2 at 112 (SWBT's notes stating that Sarah called Francisco and "left a message regarding denied disability" on August 15 and August 16, 2013).  Additionally, SWBT sent two letters to Francisco (on August 19 and August 26) demanding that he return to work.  Dkt. 15, Ex. 2 at 110–111.  The first letter stated that he was required to return to work on August 26 and the second stated that he was required to return to work on September 3.  *Id*.  The first letter warned that failure to return to work "*may* result in your employment being terminated as Misconduct-Insubordination" and the second letter warned that "failure to report to work . . . *will* result in your employment being terminated."  *Id*. (emphasis added).

### (ii) Francisco's Evidence of Pretext

In the face of SWBT's legitimate, nonretaliatory reason for terminating Francisco's employment, the burden shifts to Francisco to establish that SWBT's reason for his discharge was a pretext for discrimination.  *See Hunt*, 277 F.3d at 768.  An employee may establish pretext "directly, by showing a discriminatory reason motivated management, or indirectly, by showing that the reasons given for management's actions are simply not believable."  *See Rios*, 252 F.3d at 378 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252, 101 S. Ct. 1089 (1981)); *see also Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) ("A plaintiff may establish pretext either through evidence of disparate

17

treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'").  In either respect, the plaintiff bears the burden of persuading the court that SWBT unlawfully retaliated against him.  *Id*. at 378 (citing *Reeves*, 530 U.S. at 142).  Moreover, pretext is not established by creating only a weak issue of fact as to whether SWBT's reason for terminating him is untrue.  *See Reeves*, 530 U.S. at 148 ("[A]n employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

Francisco does not argue disparate treatment; rather, Francisco asserts that the reason proffered is unworthy of credence.  *See* Dkt. 18 at 13 ("Plaintiff does not allege that other employees were treated more favorably because they did not exercise FMLA rights, but that the adverse decision was made *because* he took FMLA leave.").  Francisco argues that the proffered reason is untrustworthy because SWBT "threatened Francisco with termination before even allowing him the opportunity to appeal his short-term disability denial." *Id*. at 15.  However, the evidence Francisco cites to supports the opposite conclusion.  Francisco points out that SWBT's August 19 demand to return to work letter (Dkt. 15, Ex. 2 at 110) mandated that Francisco return to work or appeal his disability denial and provide the proper medical documentation by August 26, 2013, whereas the August 20 letter (Dkt. 18, Ex. 1 at 66) sent from the FMLA department states that the requested medical information (the FMLA 4) required to extend his FMLA was needed no later than August 29, 2013. Dkt. 18 at 15.  First, these letters are not in conflict because one letter discussed the requirements relating to disability benefits and the other relates to Francisco's FMLA leave.  The letters demonstrate that SWBT was advising Francisco on how to (1) appeal his short-term disability denial and (2) extend his FMLA leave through September 30, 2013.  Dkt. 18, Ex. 1 at 66; Dkt. 15, Ex. 2

at 110.  The demand to return to work letter provided Francisco with the option of either returning

to work or appealing his disability denial by August 26 and warned that doing neither *may* result in

termination.  Dkt. 15, Ex. 2 at 110.  These letters do not support pretext.

Francisco also argues that there is a "genuine issue of material fact as to whether he was

insubordinate in the method he communicated with Defendant."  Dkt. 18 at 16.  However, SWBT

need not prove Francisco's insubordination.  Rather, Francisco must show that SWBT's proffered

reason for termination—Francisco's failure to either return to work or take the appropriate steps to

extend FMLA leave and/or disability at the request of management—is not the real reason it

terminated Francisco.  *See Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)

(stating that the issue is whether the employer's perception of the plaintiff's performance, accurate

or not, was the real reason for her termination); *see also Mendoza v. El Paso Ct*y., No.

EP-11-CV-0221-KC, 2012 WL 1952278 (W.D. Tex. May 30, 2012) (finding that where the

employer honestly believes the reason it has articulated is the real reason for the decision, there can

be no finding of pretext).  Francisco has not provided any evidence that SWBT's reason for

discharge is not believable or otherwise unworthy of credence.

In fact, the evidence shows that SWBT management took several steps to extend Francisco's

FMLA leave through September 30, 2013.  SWBT attempted to contact Francisco on multiple

occasions, via telephone and through written correspondence, prior to terminating his employment.

Moreover when Sarah was unable to contact Francisco, he attempted to extend Francisco's FMLA

protected leave through September 30, 2013 by submitting the appropriate form on Francisco's

behalf. Dkt. 15, Ex. 10 at 3.  Upon receiving the approval request from Sarah, the FMLA department

sent two letters to Francisco, enclosing a copy of the forms he was required to submit for approval

of additional protected leave.  Dkt. 15, Ex. 11.  As discussed above, SWBT sent Francisco two

19

"demand to return to work letters" on August 19 and August 27.  Dkt. 15, Ex. 2 at 110, 111.  The second letter expressly states: "failure to report to work . . . will result in your employment being terminated." *Id*. at 111.  Francisco testified that (1) he notified SWBT's corporate office of his move to Florida, but does not remember when he made the call; and (2) on August 26, he told the HR Benefits department that he was unable to reach his doctor to complete the required certification. However, there is no evidence to suggest that this was communicated to Francisco's supervisors prior to his termination.  In fact, Francisco admitted that, throughout this whole process, he did not contact anyone at SWBT directly connected with his employment because he was instructed by his doctor not to talk to AT&T management.  Dkt. 15, Ex. 2 at 17 (Francisco Dep.).

When Francisco failed to return to work on September 3, 2013 or take the necessary steps to extend his FMLA leave, Francisco was terminated.   In light of the overwhelming evidence supporting SWBT's claim that Francisco was terminated for job abandonment and the lack of any evidence of pretext, SWBT's motion for summary judgment is GRANTED as to Francisco's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, SWBT's motion for summary judgment (Dkt. 15) is GRANTED as to Francisco's retaliation claim and DENIED as to his interference claim.   Accordingly, Francisco's retaliation claim is DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on July 25, 2015.

_____
Gray H. Miller
United States District Judge