United States District Court
Southern District of Texas

**ENTERED**

August 17, 2016

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY FRANCISCO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-3178 |
| | § | |
| SOUTHWESTERN BELL TELEPHONE COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is defendant Southwestern Bell Telephone Company's ("SWBT") motion for partial reconsideration.  Dkt. 24.  Having considered the motion, response, record evidence, and applicable law, the court is of the opinion that the motion should be GRANTED.  Accordingly, plaintiff Anthony Francisco's complaint is DISMISSED WITH PREJUDICE.

## I. BACKGROUND[1]

Francisco filed this employment suit against SWBT, asserting claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2), and the Americans with Disabilities Act ("ADA").  Dkt. 1.  On December 11, 2015, SWBT filed a motion for summary judgment seeking to dismiss all claims.  Dkt. 15.  Francisco subsequently withdrew his ADA claims (Dkt. 21), leaving the court to decide SWBT's motion as to Francisco's FMLA claims.  Francisco brought two claims under the FMLA, alleging that SWBT (i) interfered with his rights under the FMLA and (ii) retaliated against him for exercising those rights by terminating his employment.  Dkt. 1 at 5.  On July 25, 2016, the court granted SWBT's motion for summary judgment as to Francisco's retaliation

---

[1]For a more detailed description of the background facts in this case, refer to the court's July 25, 2016 memorandum opinion and order.  Dkt. 23 at 1–6.

claim and denied the motion as to his interference claim.  Dkt. 23.  SWBT now requests that the court reconsider its ruling on the FMLA interference claim.  Dkt. 24.  On August 15, 2016, Francisco filed a response in opposition to SWBT's motion for reconsideration.  Dkt. 26.  The motion is now ripe for disposition.

## II. LEGAL STANDARD

A district court has discretion to grant or deny a motion for reconsideration.  *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).  A motion for reconsideration filed within ten days of judgment is treated as a motion to alter or amend under Rule 59(e).  *Id*. at 353. A motion to alter or amend a judgment must "clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued.  Moreover, they cannot be used to argue a case under a new legal theory." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

## III. MOTION FOR RECONSIDERATION

In the July 25 order, the court dismissed Francisco's retaliation claim, finding that there was "overwhelming evidence supporting SWBT's claim that Francisco was terminated for job abandonment" and a "lack of any evidence of pretext."  Dkt. 23 at 20.  The court denied SWBT's motion with respect to Francisco's interference claim.  *Id*. at 15.  The court held that although Francisco failed to satisfy SWBT's procedures for obtaining FMLA leave, there was a genuine issue of material fact as to whether "unusual circumstances" justified Francisco's noncompliance with SWBT's FMLA procedures.  Dkt. 23 at 14–15.

In support of its motion for reconsideration, SWBT argues, *inter alia*, that the court failed to properly apply the "unusual circumstances" exception to the facts in this case.  Dkt. 24.  After

reexamining the record evidence and relevant case law, the court agrees with SWBT that unusual circumstances did not justify Francisco's failure to comply with SWBT's notice and procedural requirements.[2]

### A.       Unusual Circumstances Exception

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the statute]."   29 U.S.C. § 2615(a)(1).   Unlike retaliation claims, interference claims do "not require a showing of discriminatory intent"; the plaintiff must prove only an act of interference.  *See Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 349 (5th Cir. 2013) (Elrod, J., concurring) (noting that claims arising from the deprivation or interference of FMLA rights do not require discriminatory intent, whereas retaliation claims do); *see also Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002) ("If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation regardless of the employer's intent.").

The memorandum opinion notes that "Francisco appears to allege two alternative theories of interference:" (1) SWBT terminated his employment on September 4, 2013, while he was on FMLA leave and then failed to reinstate him; and (2) SWBT wrongfully denied him FMLA leave beyond August 13.  Dkt. 23 at 8.  The court rejected Francisco's first theory of FMLA interference by finding that Francisco's FMLA leave expired on August 13, 2013, due to his failure to timely submit a Certification of Health Care Provider Form ("medical certification") required for obtaining FMLA leave for the August 14 to September 30 time period.  *Id.* at 9–10.  However, the court denied

---

[2] Because the court's revised ruling regarding the unusual circumstances exception is fatal to Francisco's interference claim, the court need not address SWBT's remaining arguments.

3

SWBT's motion for summary judgment with respect to Francisco's alternative theory of interference (i.e., that SWBT wrongfully denied Francisco FMLA leave for the August 14 to September 30 time period), finding a genuine issue of material fact as to whether "unusual circumstances" justified Francisco's failure to submit his medical certification by the August 29 deadline. *Id.* at 12–14.

The FMLA provides that if "an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." 29 C.F.R. § 825.302(d). Based on this provision, many courts, including one within this circuit, have applied the "unusual circumstances" exception to prevent a defendant from raising the plaintiff's noncompliance with its FMLA procedures as a defense to the plaintiff's interference claim. *See, e.g., Villegas v. Albertsons, LLC* 96 F. Supp. 3d 624, 634 (W.D. Tex. 2015) (finding a genuine issue of material fact as to whether unusual circumstances justified the plaintiff's failure to comply with the employer's FMLA requirements where the plaintiff's supervisor had previously failed to follow or enforce them).

Section 825.302(d) provides one example of what constitutes unusual circumstances: "[u]nusual circumstances would include situations such as when an employee is unable to comply with the employer's policy that requests for leave be made by contacting a specific number because on the day the employee needs to provide notice of his or her need for leave there is no one to answer the call-in number and the voice mail box is full." *Id.*

Because the Fifth Circuit has not weighed in on what circumstances qualify as unusual, the court cited to various district court cases where the unusual circumstances exception has been applied. Dkt. 23 at 11–12 (citing *Flores v. Murphy Co.*, 2014 WL 584553, at *6 (D. Or. Feb. 12, 2014) (finding sufficient evidence of unusual circumstances where employee could not comply with employer's call-in procedure because he was incarcerated and lacked phone access); *Fuller v. AT&T*,

4

No. 12-1001, 2014 WL 66019, at *7 (W.D. Pa. Jan. 8, 2014) (applying unusual-circumstances exception where conflicting instructions about procedures raised a genuine issue of fact as to whether noncompliance was justified); *see also Uselton v. CSX Transp., Inc.*, No. 3:13-cv-349, 2014 WL 4388272, at *5 (N.D. Ohio Sept. 5, 2014) (finding that a reasonable juror could apply unusual-circumstances exception where employer's procedure conflicted with special instructions from its employee-assistance program and thus "effectively mitigated [plaintiff]'s failure to provide [his employer] with notice")). After further review, it appears that each of these cases involved circumstances where either (i) the employee was physically unable to comply with the employer's notice requirements or (ii) the employer was at least partially to blame for the employee's failure to comply. Here, the circumstances do not fall under either of these categories.

The court noted that, due to the following circumstances, Francisco failed to submit his medical certification by the August 29 deadline:

- In late July or early August, Francisco relocated to Florida to take care of his terminally ill father. Dkt. 18, Ex. 1 at 5 (Francisco Dep.). Francisco testified that he did not notify his supervisors at SWBT because his doctor had instructed him not to contact them because he was being treated for depression and anxiety, in part caused by work-related stress. *Id*. at 17. Instead, Francisco notified SWBT of his change in address by calling SWBT's corporate office. *Id*. Consequently, Francisco did not receive any of SWBT's written communications, including the letters advising him to complete the certification and the letters demanding that he return to work. *Id*. at 26–27. Francisco further testified that he did not receive any phone calls or messages from SWBT. *Id*. at 26.

- Sometime in late August, Francisco called SWBT to inquire about why he had not received his disability check. Dkt. 18, Ex. 1 at 97 (SWBT's claim notes). During that conversation, Francisco learned that his disability had been denied because his healthcare provider had not responded to requests for additional information on the FMLA4 form. *Id*. at 34–35 (Francisco Dep.). Francisco claims that he informed SWBT claims personnel that he was in Florida and that his father had passed away three days earlier. *Id*.

- After this conversation, Francisco claims that he immediately attempted to contact Dr. Gorsuch to notify him that additional paperwork was needed to continue his

5

short-term disability and FMLA leave. *Id*. at 16–17. However, Francisco was unable to reach Dr. Gorsuch because he suffered an emergency medical condition that caused him to be absent from his practice until September 30, 2013. *Id*. The record also shows that Francisco attempted to contact his psychiatrist, Dr. Pham, on multiple occasions. *See* Dkt. 18, Ex. 1 at 113–117 (notes from Dr. Pham's office, stating "Pt. keeps calling about his disability form" and patient is "freaking out and does not know what to do"). When Dr. Gorsuch returned, he promptly submitted the requested paperwork and a letter confirming that he had been out of the office because he underwent open-heart surgery. *Id*. at 110 (Dr. Gorsuch letter).

• Francisco further claims that he contacted SWBT's HR benefits department and notified them of Dr. Gorsuch's medical condition and his inability to submit the required paperwork. *Id*. at 27 (Francisco Dep.). Francisco alleges that he was told he was in a "Catch 22" situation because he "couldn't be released to go back to work" and "couldn't get the documents" to extend his FMLA leave. *Id*. at 28.

First, the court determined "[t]hat these circumstances create a fact issue as to whether adequate notice of Francisco's need for FMLA leave was provided to SWBT." Dkt. 23 at 14. The court relied heavily on Francisco's testimony that (1) he updated his contact information by calling SWBT's corporate office and (2) prior to the August 29 deadline, he informed SWBT's HR benefits department that he was attempting to comply with the medical certification requirement but was unable to do so because his doctor was out of the office due to an emergency medical condition. *Id*. However, Francisco admits that (i) he does not know when his conversation with the HR benefits department occurred or with whom he spoke; and (ii) he never contacted his supervisor or anyone directly connected with his employment to notify them about his move to Florida or attempted to inform them that he intended to extend his FMLA leave. Dkt. 18, Ex. 1 at 17–18. Even though Francisco had requested and obtained FMLA leave by contacting his direct supervisor on two previous occasions, Francisco chose to contact SWBT's HR benefits department several weeks after SWBT provided him with notice that he needed to submit the medical certification. Moreover, on July 2, 2013, Francisco was specifically instructed that he was required to advise his *supervisor* of "any changes to [his] home address so that they may be included on the FMLA1 and updated in

6

[SWBT's] records." Dkt. 15, Ex. 5 at 4.  Based on these facts, the court finds that no reasonable juror could find that Francisco provided adequate notice.

In reaching its decision that a reasonable juror could find that, under the circumstances, Francisco's noncompliance was justified, the court relied heavily on the fact that Francisco was unable to reach Dr. Gorsuch (his treating physician) because he suffered an emergency medical condition.  Dkt. 24 at 13.  A letter from Dr. Gorsuch confirmed that he had been unable to complete the medical certification for Francisco because he underwent open-heart surgery, which caused him to be absent from his practice for several weeks.  Dkt. 18, Ex. 1 at 110.  However, in its motion for reconsideration, SWBT has presented the following time line of Dr. Gorsuch's medical emergency and SWBT's communications to Francisco and his physicians:

- SWBT's IDSC department spoke with Dr. Gorsuch on July 24 and explained that updated medical documentation was required to extend Francisco's disability benefits beyond August 12.  Dkt. 18, Ex. 1 at 90.  Dr. Gorsuch informed the IDSC that he was seeing Francisco weekly, that Francisco was also seeing Dr. Pham, and that his next office visit with Francisco was scheduled for July 27.  *Id*.

- The IDSC spoke with Dr. Pham's office on July 24 and sent a facsimile request for updated medical documentation.  Dr. Pham's office confirmed receipt of the faxed request on July 25.  *Id*. at 90–91.

- SWBT attempted to contact Francisco via telephone on July 18, July 24, July 26, August 7, August 12, and August 13 to inform him that updated medical documentation was required to support additional short-term disability benefits and protected leave beyond August 12.  *Id*. at 88–95.

- The IDSC called both of Francisco's treating physicians, Dr. Pham and Dr. Gorsuch, on August 7, 2013 and August 12, 2013.  *Id*. at 93–95.  On August 12, the IDSC spoke with Dr. Gorsuch's office and was informed that he was with a client and would have to call back.  *Id*. at 93.  The IDSC sent a second request for medical documentation to Dr. Pham's office via facsimile on August 7 and spoke with Dr. Pham's assistant on August 12.  *Id*.

- Francisco and Dr. Gorsuch met again on August 15, 2013.  *Id*. at 110 (Dr. Gorsuch letter).

- Dr. Gorsuch was hospitalized sometime after his August 15 appointment with Francisco.

Francisco did not dispute the above time line in his response to the motion for reconsideration.  Dkt. 26.  Moreover, the above time line is consistent with the record evidence. Therefore, the record establishes that (i) Dr. Gorsuch's medical emergency occurred sometime after August 15, 2013; (ii) prior to Dr. Gorsuch's medical emergency, SWBT had attempted to contact Francisco via telephone on at least five (5) occasions regarding his obligation to provide updated medical documentation to support his continued leave; (iii) SWBT had spoken with Dr. Gorsuch at least twice in advance of the August 15 appointment; and (iv) Francisco was also under the care of Dr. Pham, yet there is no evidence that Dr. Pham was hospitalized or otherwise unable to provide a medical certification for Francisco.  Accordingly, even if a treating physician's medical emergency could qualify as "unusual circumstances" under section 825.302(d) of the FMLA, Dr. Gorsuch's medical emergency did not contribute to Francisco's failure to comply prior to August 16, 2013.

Here, there is no evidence that Francisco was physically prevented from complying with SWBT's procedures during the relevant time period, or that any action or inaction by SWBT prevented his compliance.  Rather, during the time period between July 1 and August 15, 2013, the circumstances preventing Francisco from following SWBT's procedures were (i) Francisco's moving from Texas to Florida and failing to notify his supervisor of his new address, as required under SWBT's policies; (ii) Francisco's failure to answer SWBT's repeated phone calls and failure to set-up the voice mail feature on his phone; (iii) Francisco's refusal to contact anyone at SWBT directly connected with his employment; and (iv) and Francisco's failure to ensure that his treating physicians updated his medical documentation.  These circumstances do not excuse Francisco's failure to comply with SWBT's notice and procedural requirements.

### B.    SWBT's Good Faith Effort

Although interference claims do not require a showing of discriminatory intent, the Fifth

8

Circuit has held that an employer's intent and general attitude regarding FMLA-compliance is relevant to the interference analysis. *See Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 682 (5th Cir. 2013). In *Shirley*, the Fifth Circuit affirmed the district court's decision to grant summary judgment to the defendant-employer on the plaintiff's FMLA interference claim, noting that the plaintiff "offered no evidence of discriminatory application of [his employer's] drug-free workplace policy, of hostility toward [the plaintiff's] decision to take medical leave, or of his employer's reluctance to abide more generally by the FMLA's dictates." *Id*. at 683.

As the court noted in its memorandum opinion, "the evidence shows that SWBT management took several steps to extend Francisco's FMLA leave through September 30, 2013." Dkt. 23 at 19. SWBT attempted to contact Francisco on multiple occasions, via telephone and through written correspondence, prior to denying his FMLA leave. When Francisco's supervisor was unable to contact Francisco, he attempted to extend Francisco's FMLA protected leave through September 30, 2013 by submitting the appropriate form on Francisco's behalf. Dkt. 15, Ex. 10 at 3. Upon receiving the approval request from Francisco's supervisor, the FMLA department sent two letters to Francisco, enclosing a copy of the forms he was required to submit for approval of additional protected leave. Dkt. 15, Ex. 11.

Accordingly, in light of SWBT's repeated efforts to facilitate Francisco's compliance with its procedures and extend his protected leave, coupled with Francisco's failure to show that unusual circumstances justified his noncompliance with SWBT's procedures, Francisco's interference claim fails as a matter of law.

**IV. CONCLUSION**

For the foregoing reasons, SWBT's motion for partial reconsideration (Dkt. 24) is GRANTED.  Accordingly, Francisco's interference claim is DISMISSED WITH PREJUDICE.  A final judgment will issue consistent with this order.

Signed at Houston, Texas on August 17, 2016.

Gray H. Miller
United States District Judge

10